# Klopp & Stump *versus* The Lebanon Valley Bank.

*Endorser incompetent to invalidate Note in hands of Third Party.—Right of Bank to prevent Transfer of Stock held by Debtor, until Payment of Debts due by him.*

1. The endorser of a negotiable note is not a competent witness to impair its apparent legal effect in the hands of the holder to whom it was regularly negotiated.

2. In an action by a bank against the makers of a note which was regularly negotiated, a member of the firm to whom it was made payable, and by whom it was endorsed, was offered by defendant as a witness to prove that the payees and endorsers were the real debtors, and that the note in suit was loaned to them, for their accommodation, by the maker, without consideration. *Held,*

(1.) That the witness was incompetent, although the object of his testimony was merely to show that the plaintiff holding bank stock and dividends belonging to the real debtors at the maturity of the note, should have retained it as payment, in relief of the real sureties.

(2.) That, admitting the bank stock and the dividends earned by it, to be collateral to the payment of the note held by the plaintiff, such an application as defendant claimed could not be made, especially as there were other parties claiming them, who were not in court, and whose rights could not therefore be properly ascertained.

ERROR to the Common Pleas of *Lebanon county.*

This was an action on the case *sur assumpsit,* brought August 7th 1860, by the Lebanon Valley Bank against Eli Klopp and Henry Stump, doing business as Klopp & Stump, to recover the value of a promissory note for $3000, drawn March 21st 1860, to the order of Myers & Shour, payable in two months, which was discounted at the Lebanon Valley Bank, and duly protested for non-payment.

A few days before the maturity of the note Myers & Shour failed, and on the 24th of May 1860, the last day of grace on the note, they transferred to other creditors one hundred and fifty-five shares of stock which they held in the Lebanon Valley Bank, of which the bank had notice May 28th 1861. The declaration was in *assumpsit,* to which defendants pleaded *non assumpsit,* set-off, payment, and payment with leave, &c.

The defence was, that it was an accommodation note, drawn for the benefit of Myers & Shour, and was their proper debt, and that at the time the note became due the bank had in its hands the means of payment, to wit, the one hundred and fifty-five

shares of the capital stock of the bank, owned by said Myers & Shour, on which were undrawn dividends to the amount of $194.25, and which it was bound to retain, and apply to that purpose.

On the trial, the defendant offered to prove, by a receipt of Myers & Shour, written by Shour, that the note in controversy, with another for same amount, was given to them by Klopp & Stump, not as an evidence of indebtedness on their part, but as a loan and an accommodation, which note Myers & Shour, in said receipt, promised and agreed to "pay at maturity." By agreement of counsel, the receipt was received in evidence, and the facts therein stated conceded to be true, provided said facts were competent and legal evidence in the cause, and admissible under the pleadings, and subject also to all legal objections which could be made or taken to the testimony of Samuel P. Shour, if called as a witness by defendants to prove the facts stated in the receipt.

Under this agreement the receipt was admitted in evidence, its effect to be determined by the court after the whole case had been heard. It was further proven that the proceeds of the notes were placed to the credit of William Eckert, the last endorser, who drew his check for it in favour of Myers & Shour, to whom the money was paid; that they had held the shares of stock above mentioned, which (with the dividends thereon to the amount of $194.25), stood in their names on the books of the bank, and was worth one dollar per share advance on the sums paid in, viz., $25 on one hundred shares, and $5 on fifty-five shares; that on the 20th of July 1860, the bank was notified by Klopp & Stump that the note had been merely loaned to Myers & Shour for their accommodation, and without any value received therefor, and requiring the bank to apply the bank stock and undrawn dividends of Myers & Shour to the payment thereof, if not already done. It was also proven that the bank held no other notes against Myers & Shour to which they could at that time apply the stock and dividends.

The court below (PEARSON, P. J.) charged the jury as follows:—

"The note is sufficient evidence of indebtedness on the part of the drawers, but they defend on the ground that it was accommodation paper, drawn for the benefit of Myers & Shour, as their proper debt, and that the bank had, at the time it fell due, the means of payment in its hands, by the stock of Myers & Shour, and was bound to retain and apply the stock to that purpose. If this was accommodation paper, and the real debtors held stock in the bank to the value of the note at the time, and 'it was *certainly due and unpaid*,' it had the means of payment in its hands, and was bound to retain the same in relief of the surety: Kuhns *v.* The Bank, 2 Watts 136.

[Klopp & Stump *v.* Lebanon Valley Bank.]

"If we have no legal evidence before us that Myers & Shour were the principal debtors, but were what the note showed, mere endorsers, then the bank was not bound to retain the stock of the endorsers to pay the debt of the principal, but could properly give it over to their assignee. It is only in relief of a surety that the creditor is bound to retain a fund in his hand belonging to the principal debtor in payment of his debt.

"The face of the paper shows Klopp & Stump the principal debtors, and the only evidence to prove the reverse is that of Samuel P. Shour, who, it is conceded, would prove the genuineness and authenticity of the receipt, dated March 9th 1860, but of which there is no other evidence, and it is not evidence *per se,* but must be authenticated as a genuine instrument, given at the time it bears date. [Samuel P. Shour is an endorser, and on that account is an incompetent witness, for the purpose of invalidating a negotiable instrument actually negotiated in the usual course of business, before due, and to which he had given authenticity by his endorsement. He cannot be permitted to prove that the paper is a different instrument from what it purported on its face to be,] although he may be permitted to prove subsequent facts : Bank *v.* Walker, 9 S. & R. 229; Kirkpatrick *v.* Muirhead, 4 Harris 128 ; Harding *v.* Mott, 8 Id. 469. [He cannot be permitted to testify that he who purports to be the principal debtor was in reality a mere surety, or that the endorser was the principal debtor ; nor can he be permitted to open his mouth to prove any fact in regard to the drawing or negotiation of the paper, to make room for his own testimony ;] but if the same is impeached by others, and it is shown that the instrument was not duly negotiated in the usual course of business, he thus becomes competent. We received this paper under the agreement, treating it as authenticated by Shour, supposing that other evidence in the case might tend to show the same thing, or impeach the regularity of the transaction. Also, because it might not be made to appear that the bank stock had ever been transferred. [But after hearing the whole case, no other evidence has been given to change the nature of the transaction, and the bank stock, it seems, was assigned by Myers & Shour on the very day that this note fell due. We therefore feel ourselves bound to instruct you that Samuel P. Shour is not a competent witness in this case to prove the facts proposed to be established by him ; that his evidence would materially change the character of the paper in the hands of the present holder, and although not rendered incompetent by interest (as he has none), yet he is on the ground of public policy, under the rule in Walton *v.* Shelly, which is firmly established as a principle of evidence in Pennsylvania. His testimony must be discarded from your consideration, and that being out of the way, there is nothing to change the character of the note or the

[Klopp & Stump *v.* Lebanon Valley Bank.]

parties thereto ; consequently the defendants have no claims on the bank stock of Myers & Shour, and cannot demand that it be appropriated to the payment of their debt.]

"We have been requested by the defendants' counsel to instruct you that the assignment of the stock of Myers & Shour, on the 24th of May, being the last day of grace on the note in suit, was invalid as against the present claim, and that the bank officers might and were bound to refuse to permit it to be transferred on their books. It is well settled that an equitable assignee of bank stock can by action oblige the bank officers to permit a transfer, unless there is some legal impediment, and in the present case we can see none, if this note is to be treated as the original obligation of Klopp & Stump. We therefore abstain from determining whether this was a '*debt actually due and payable*' on the 21st of May 1860, within the words of the Bank Law, or whether the days of grace are to be superadded. The assignment was made on the 24th day of May, which was the last day of grace. Yet the note probably could not have been sued on that day, as the days of grace have become a settled part of the obligation. Although under the custom of merchants it could be protested on the last day of grace, it probably could not be sued until the next day. See 2 B. & A. 188; 3 Wend. 170; 2 Miles 253.

"For all practical purposes the days of grace are part of a promissory note: 2 Cowan 680.

["As the other point is decisive of the case, you will render your verdict in favour of the plaintiff for the amount of the debt, interest, and cost of protest."]

There was a verdict and judgment for plaintiff; whereupon the defendants sued out this writ, and assigned for error so much of said charge as is enclosed in brackets.

*Levi Kline* and *Josiah Funk*, for plaintiffs in error.—Shour was not offered to impeach the note in the hands of the plaintiff, or to open the way for this purpose, but simply to show that as between the defendants below, makers of the note, and Myers & Shour, the latter were the real debtors, and the former merely sureties, and that therefore the stock and dividends, in the hands of the bank, should be applied to its payment in relief of the surety. The testimony could not injure the plaintiffs. They were to be paid at all events; and whether this were done by defendants, or by Myers & Shour's stock and dividends, could make no difference to the bank. If the dividends were used for this purpose, the balance would be payable by the defendants below. If both stock and dividends were retained, the note would be discharged. The bank was thus merely a stakeholder between defendants, and Myers & Shour and their assignees.

[Klopp & Stump v. Lebanon Valley Bank.]

The witness was not interested; he was testifying against his interest. The rule invoked on the other side is well enough, where the testimony is offered to destroy the paper in the hands of an innocent third party; but that is not this case, nor can a case be found where the testimony of a disinterested witness, against whom there is no personal objection, was excluded, when offered for the purpose above stated. This court has repeatedly held that an endorser is a competent witness for some purposes, and that his admissibility depends on the character and effect of his testimony, and the purpose for which it is offered: Kirkpatrick v. Muirhead, 4 Harris 128; Harrisburg Bank v. Foster, 8 Watts 304; Gilpin v. Howell, 5 Barr 52; Work v. Hall, 10 Casey 141.

The rule in Walton v. Shelly, and kindred cases, does not therefore apply.

Even if the effect of the testimony was to change the *status* of the parties, this was no valid objection to its admission, when the object was not to invalidate the note, but to make the real debtor pay it out of funds in possession of the holder. Under the Act of April 11th 1850, sec. 10, art. 10, and their own by-laws, the bank had a right to retain the stock and dividends for this purpose, if the note was due on the 24th of May 1860, the day when the stock was assigned. It was due—that was the last day of grace: King v. Holmes, 1 Jones 459. In fact it was overdue, for the days of grace constitute no part of the contract between the parties to a note. The bank was bound, therefore, in relief of the surety, to retain the stock and dividends, or lose its claim on them: Commonwealth v. Miller, 8 S. & R. 452; Talmadge v. Burlingame, 9 Barr 21; Kuhns v. Westmoreland Bank, 2 Watts 136; Farmers' Bank of Reading v. Gibson, 6 Barr 37; Gilpin v. Howell, 5 Barr 41; Slaymaker v. Bank, 10 Id. 375. This was the only note due to the bank by Myers & Shour, on that day, and was therefore the only lien which plaintiff below had against the stock and dividends. As to the notes not due, the assignment was good: Presbyterian Congregation v. Carlisle Bank, 5 Barr 345; Grant v. Philadelphia Bank, 18 S. & R. 144; Rogers v. Huntingdon Bank, 12 Id. 79; Commonwealth v. Watmough, 6 Whart. 139; United States v. Vaughn, 3 Binn. 394.

*John C. Kunkel, Amos R. Boughter*, and *John W. Ulrich*, for defendants in error.—1. When it is remembered that the witness offered on the other side was one of the payees on the note, by whom it was negotiated, in the ordinary course of their business, before maturity, and was discounted by the bank, without any knowledge of its character, excepting what appeared on its face, and indeed not until two months after maturity, when the rights

of others to the bank stock of Myers & Shour had intervened, the propriety of the ruling of the court below will be manifest.

The books are full of cases which sustain it:—Bank of Montgomery County *v.* Walker, 9 S. & R. 229; 12 Id. 38; Appleton *v.* Donaldson, 3 Barr 381, 389; Jarden *v.* Davis, 5 Whart. 338; Gest *v.* Espy, 2 Watts 265, Bullock *v.* Wilcox, 7 Id. 328; Harrisburg Bank *v.* Forster, 8 Id. 304; Davenport *v.* Freeman, 3 W. & S. 557; Rosenberger *v.* Bitting, 3 Harris 278; Kirkpatrick *v.* Muirhead, 4 Id. 128; Harding *v.* Mott, 8 Id. 469; Pennypacker *v.* Umberger, 10 Id. 492; Lewis *v.* Hanchman, 2 Barr 416, 420; Love & Son *v.* Brown Brothers, 2 Wright 307.

2. The stock was assigned by Myers & Shour, on the 24th of May 1860, while the true character of the note was not known to the bank until July 24th 1860. It was then too late. The parties owning the stock appeared to be only payees and endorsers of the note, against whose stock the bank has no lien under the Act of 1850.

Nor was the note due at the time the stock was assigned by Myers & Shour, and if not the bank had no lien by the terms of the act. An action brought on the third day of grace is premature: Osburne *v.* Moncure, 3 Wend. 170; Savings Bank of New Haven *v.* Bates, 6 Conn. Rep. 505; New York Firemen's Bank *v.* Ely, 2 Cowen 680; Bevan *v.* Eldridge, 2 Miles 353.

The opinion of the court was delivered, June 5th 1861, by

LOWRIE, C. J.—Shour is an endorser of this note, and as such is not a competent witness to impair its apparent legal effect in the hands of the holders, to whom it was regularly negotiated; and, notwithstanding the very careful argument of the counsel of the plaintiff in error, we do not think they have succeeded in taking this case out of the rule.

It is not payment, in the proper sense, that is desired to be shown by the witness, or as a sequel of his testimony. Part of the purpose is to require the plaintiffs to apply the bank stock of Myers & Shour, alleged to be pledged by the law as collaterals, to the payment of this note. But even if there were no other claimants of that stock, such an application of it could not be made in this action. The defendants would have first to pay the note, and then claim an assignment of the stock for their security.

Even the dividends earned by the stock before it was assigned, are not properly payment, though they might possibly be treated as *constructive* payment, as far as they go; yet this could be done only by way of equity, and when the equity is plain. It would seem to be plainly inequitable to allow the legal rights of the plaintiffs to be abated by treating these dividends as payment *pro tanto*, while there are other parties claiming them who can-

not be made parties to this suit, and while, therefore, it must be uncertain whether they can properly be so treated. And especially would it be improper to allow the holder of the note to be put into this position by the testimony of one on whose faith they purchased it. Such testimony would, in such a case as this, very seriously impair the value of the note, in the hands of the holder, by impairing the certainty of his remedy; and it was properly rejected. If the stock and its dividends are, in fact and in law, collaterals, of which the defendants can claim the benefit, they must seek their remedy in some other form, that is less dangerous to the rights of the plaintiffs below.

Judgment affirmed.